IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Tina Marie McGuire,                              :
          Plaintiff,                    :       Civil Action 2:12-cv-01084

      v.                                     :       Judge Marbley

Commissioner of Social Security,          :       Magistrate Judge Abel
          Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Tina Marie McGuire brings this action under 42 U.S.C. §§405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security denying

her application for Supplemental Security Income benefits.  This matter is before the

Magistrate Judge for a report and recommendation on the administrative record and the

parties' merits briefs.

**<u>Summary of Issues.</u>**  Plaintiff McGuire maintains that she became disabled on

January 1, 2009, at age 40, due to lumbar radiculopathy at L5-S1; a skin condition:

palmer plantar pustulosis; allergies; depression; and anxiety.  (*PageID* 192.)

Plaintiff argues that the decision of the Commissioner denying benefits should be

reversed because:

- The administrative law judge improperly assigned weight to records;

- The administrative law judge made an erroneous credibility finding;

- The administrative law judge proposed an improper hypothetical and improperly failed to define moderate limitations;

- The administrative law judge failed to consider favorable evidence and made a finding based on partial record.

**Procedural History.**  Plaintiff McGuire protectively filed her application for supplemental security income on June 8, 2009, alleging that she became disabled on January 1, 2009, at age 40.  (*PageID* 162-64.)  The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On March 11, 2011, an administrative law judge held a video hearing at which plaintiff, represented by counsel, appeared and testified.  (*PageID* 66-93.)  A vocational expert also testified.  (*PageID* 93-99.)  On March 21, 2011, the administrative law judge issued a decision finding that McGuire was not disabled within the meaning of the Act.  (*PageID* 44-54.)  On September 27, 2012, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (*PageID* 31-33.)

**Age, Education, and Work Experience.**  McGuire was born on October 21, 1968.  (*PageID* 67, 162.)  She obtained a GED and completed a vocational program in nurse assisting.  (*PageID* 71-73, 201.)  McGuire has past relevant work in food service, home/ office cleaner, plant nursery and retail.  (*PageID* 193, 205-12.)

**Plaintiff's Testimony.**  Plaintiff testified at the administrative hearing that she was 5'4" and weighed approximately 120 pounds.  (*PageID* 67.)  While she lived at her mother's house she did have problems negotiating the stairs in the house.  (*PageID* 70.)  She stated there were times that she had to sit down on a step and wait to get back up and continue.  *Id.*  She did not use any assistive device.  *Id.*

2

She has a driver's license and drives her daughter to school each day. (*PageID* 70.) She does not have any problems operating the steering wheel or working the pedals, she did note however that driving long distances "kills my back." (*PageID* 71.)

McGuire testified that her last job was housekeeping/office cleaning for a financial company. She was let go due to the owner having family issues. (*PageID* 74.)

McGuire further testified that she cannot sit completely down, and experiences sharp pain in her left leg and into her hip due to her tailbone problems. (*PageID* 76.) She did not notice any real problems with her back until she began lifting patients as part of clinical training to be a nurse assistant. (*PageID* 77.)

McGuire next testified that her second most severe impairment is her skin condition, palmer plantar pustulosis, which flares up for to 6-8 months at a time, causing seeping blisters. (*PageID* 78.)

With regard to her mental health problems, McGuire testified that she has problems with anxiety and has panic attacks when around crowds. (*PageID* 80.) She alleged obsessive compulsive disorder, testifying to over-cleaning and fear of germs. (*PageID* 81-82.) She has no problems getting along with anyone, including an ex-boyfriend with whom she currently resides. (*PageID* 67, 88.)

On a typical day, McGuire testified that she drives her daughter to school, performs light household chores, shops for groceries, and cooks dinner with help from her daughter. (*PageID* 84, 86-87.)

McGuire estimated that she is able to regularly lift 5-7 pounds, can walk only 2

3

blocks, can sit and stand only 10-15 minutes at a time, can bend and touch her knees but not her toes, and has no problems using her arms or hands. (*PageID* 89-92.)

**Medical Evidence of Record.** The administrative law judge's decision fairly sets out the relevant medical evidence of record. This Report and Recommendation will only briefly summarize that evidence.

**Physical Impairments.**

Bruce P. Miller, M.D. McGuire treated with Dr. Miller, her primary care physician, from November 17, 2006 to at least December 28, 2010. (*PageID* 284-301, 336-48, 432-93.) She saw Dr. Miller for headaches, low back pain, pain in her legs, skin discoloration, anxiety and depression. *Id.* In February 2009, McGuire complained of low back and tailbone pain, particularly when sitting for any duration. Range of motion of her left leg caused pain in her left lower back. She also exhibited tenderness on palpation of the tailbone. She had strong pulses bilaterally and intact sensation. Dr. Miller diagnosed lumbar radiculopathy with possible old fracture of the coccyx. He ordered x-rays and referred McGuire to a neurologist. (*PageID* 290.)

X-rays of McGuire's lumbar spine and pelvis were normal, but an x-ray of her coccyx showed an angulation that possibly represented a remote fracture. (*PageID* 286, 295-97.) A May 2009 MRI of her lumbosacral spine showed degenerative changes at L5-S1 with mild to moderate narrowing of the neural foramen and spinal canal, as well as a diffuse disc protrusion. (*PageID* 302-03.)

4

When examined in March 2010, McGuire demonstrated pain with straight leg raising and range of motion of her left leg and lower back.  (*PageID* 456.)

On December 28, 2010, Dr. Miller completed a physical capacity evaluation on McGuire's behalf.  (*PageID* 424-31.)  Dr. Miller found that McGuire retained the ability to occasionally lift 10 pounds, frequently lift less than 10 pounds, stand or walk for less than two hours in an eight-hour workday, sit for about less than six hours in an eight-hour work day, and push or pull was limited in both the upper and lower extremities. (*PageID* 425.)  According to Dr. Miller, McGuire can never climb ramps, stairs, ladders, ropes, or scaffolds, stoop, kneel, crouch, or crawl and only balance occasionally.  (*PageID* 426.)  Dr. Miller also determined that McGuire was visually limited in far acuity. (*PageID* 427.)  McGuire should avoid all exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, poor ventilation and hazards (machinery heights, etc.).  Dr. Miller opined that the environmental exposure would increase her musculoskeletal pain. (*PageID* 428.)

David M. Jackson, M.D.  In April 2009, Dr. Jackson, an orthopedist, evaluated McGuire for her low back and tail bone pain at the request of Dr. Miller.  (*PageID* 494-96.)  McGuire reported she aggravated her back by lifting performed during clinical training in a nursing home. On examination, McGuire's gait was normal, she exhibited good range of motion in her hips, ankles, and knees, intact reflexes and sensation in her lower extremities, a negative straight leg raise, slight flattening of lumbar lordosis, and some discomfort on range of motion in the lumbar region.  She was not tender in the

5

coccyx area.  Dr. Jackson indicated that the x-ray findings regarding McGuire's coccyx were not clinically significant, and that she would likely improve in the long term with stretching and strengthening.  (*PageID* 495.)

McGuire was seen for follow-up in November 2009.  (*PageID* 497-98.)  Dr. Jackson's findings on examination were not meaningfully different than those in April 2009 other than she appeared to be a bit more mobile.  She still had some stiffness in her back and some flattening of lumbar lordosis but no spasm.  Her hamstrings were mildly tight.  Neurologically, Dr. Jackson found no focal deficits in lower extremities with intact reflexes and sensation.  McGuire had good foot strengths and good coordination.  Straight leg raiinge was negative for sciatica, but there was some tightness in the back.  Dr. Jackson assessed herniated lumbar disk, fairly broad based posterior and slightly to the left L5-S1 causing some narrowing of the spinal canal but not true central spinal stenosis and some narrowing of the lateral recess and foramina on the left.  (*PageID* 498.)  Dr. Jackson noted that McGuire did not want the injections recommended by Dr. Timperman or Dr. Ellis due to fear of needles.  (*PageID* 497.)

<u>Albert L. Timperman, M.D.</u>  On June 5, 2009, Dr. Timperman, a neurosurgeon, examined McGuire at the request of Dr. Miller.  (*PageID* 330-33.)  Her primary complaint was low back pain with lesser pain radiating into both buttocks, both posterior thighs to the lower legs, left greater than right, of extended duration.  (*PageID* 330.)  McGuire also reported that physical therapy had intensified her symptoms. She was taking only Naproxen on an as-needed basis, which she reported helped her pain.  On

6

examination, McGuire exhibited a normal gait, no muscle weakness, no atrophy, normal sensation, normal reflexes, and was able to walk on her heels and toes as well as perform a knee squat without problems.  She denied true radicular pain, and straight leg raising at 80 degrees produced only low back pain and hamstring tightness.  Dr. Timperman did find tenderness in the sacrum, sciatic notch, and sacroiliac joint and McGuire experienced pain on range of motion.  Dr. Timperman assessed a central left lateral herniated disk LS-S1 producing primarily low back pain and lesser lower extremity pain, left greater than the right; and depression.  He recommended lumbar epidural steroid injections and opined that McGuire does not have a condition requiring neurosurgical intervention.  (*PageID* 332.)

W. Jerry McCloud, M.D./William Bolz, M.D.  On September 1, 2009, Dr. McCloud, a state agency physician, conducted a physical residual functional capacity assessment based on McGuire's record.  (*PageID* 372-79.)  Dr. McCloud found that McGuire retained the ability to occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk about six hours in an eight-hour workday, sit for about six hours in an eight-hour work day, and push or pull was unlimited.  (*PageID* 373.)  He found McGuire would be limited to occasionally climb ramps and stairs but could never climb ladders, ropes, or scaffolds and occasionally stoop, kneel, crouch or crawl.  (Page ID 374.)  Dr. McCloud concluded that McGuire's symptoms were attributable to a medically determinable impairment; however he found McGuire's statements were only partially credible.  (*PageID* 377.)  Dr. McCloud noted that "[McGuire] does have doc-

umented back problems as evidenced by spinal MRIs in file.  However, [McGuire]

stated on her ADL form that by doctor's orders she is not able to lift, stand, walk, sit,

stair climb, kneel, squat, bend.  These statements are not anywhere in the MER and

while [McGuire] is somewhat limited by her back pain, she is not unable to perform

such activities at all."  *Id.*  Another state agency physician, Dr. Bolz affirmed Dr.

McCloud's assessment in November 2008.  (*PageID* 299.)

     Thomas Ellis, M.D.  On September 11, 2009, McGuire saw Dr. Ellis, an ortho-

pedist, for her left hip pain at the request of Dr. Miller.  Dr. Ellis noted that McGuire

walked with a limp on the left leg and had pain with range of motion and trochanteric

tenderness in the left hip. She also had a positive straight leg raise at 60 degrees on the

left, but intact motor and sensation.  Dr. Ellis recommended a hip injection to determine

if her pain predominantly resulted from her hip or her back problems.  (*PageID* 384-86.)

X-rays of her left hip revealed bilateral CAM deformities and a slight defect in the left

femoral head.  (*PageID* 388.)

     **Psychological Impairments.**

     James C. Tanley, Ph.D.  Dr. Tanley performed a consultative psychological ex-

amination at the request of the state Bureau of Disability Determination on June 3, 2009.

(*PageID* 351-53.)  McGuire reported that she is depressed. "I feel like I can crawl in a

hole 'n never come out.  It's due to my back problems.  It feels so hopeless." (*PageID*

351.)  McGuire described her daily activities as not doing "much of anything;" and

keeping things organized for her mother.  (*PageID* 352.)

8

During the mental status examination, Dr. Tanley found that McGuire was cooperative, adequately groomed, and appropriately dressed.  She appeared motivated.  There were no motor or autonomic manifestations of anxiety.  She was alert and fully oriented with intact recent and remote memory.  Her affect was flat, but she had good eye contact.  McGuire noted both an appetite and sleep disturbance with mood problems, anhedonia, feelings of hopelessness, and psychomotor slowing.  McGuire was able to remember five digits forward and three digits in reverse; she was able to provide abstract responses to three proverbs; and she was able to perform serial three addition problems.  McGuire remembered one out of three objects after a five minute period with interference.  Dr. Tanley estimated that McGuire's level of intellectual functioning fell within "at least" the low average range.  (*PageID* 352.)  Dr. Tanley assessed that McGuire was able to manage her own funds, make her own life decisions, conduct her own living arrangements, and participate in a treatment program.  Dr. Tanley diagnosed McGuire with an adjustment disorder, with depressed mood, chronic.  He assigned McGuire a Global Assessment of Functioning (GAF) score of 60. (*PageID* 353.)

Dr. Tanley opined that McGuire had no impairment of her ability to relate to others; understand and follow simple instructions; and maintain attention for simple repetitive tasks.  Dr. Tanley found that McGuire's ability to withstand stress and pressure of daily work was moderately impaired.  (*PageID* 353.)

Tonnie Hoyle, Psy.D./Karen Terry, Ph.D.  After her review of the record on August 26, 2009, state agency psychologist, Dr. Hoyle, reported that a medically determin-

9

able impairment of adjustment disorder, with depressed mood, chronic, was present, but was not severe. (*PageID* 361.) Dr. Hoyle opined that McGuire was mildly limited her activities of daily living, had no difficulties in maintaining social functioning and was moderately limited in maintaining concentration, persistence or pace, and no episodes of decompensation. (*PageID* 368.) Dr. Hoyle further determined that the evidence did not establish the presence of the "C" criteria. (*PageID* 369.)

In the narrative assessment of McGuire's ability to engage in work-related activities from a mental standpoint, Dr. Hoyle noted that McGuire's allegations are credible and consistent with the findings of Dr. Tanley as he is the only current psychological examining source. (*PageID* 356.) Dr. Hoyle concluded that McGuire can carry out tasks in situations where duties are relatively static and where changes can be explained. She can do tasks that do not require independent prioritization or more than daily planning. *Id.* In December 2009, Dr. Terry, another state agency psychologist, affirmed Dr. Hoyle's assessment. (*PageID* 421.)

Moundbuilders Guidance Center. McGuire underwent a mental health assessment on October 26, 2009. (*PageID* 402-13.) She reported increased stress because she went through a divorce in June and had back pain. She stated that she was a good people person, but did not have any friends. McGuire also reported excessive worry and some racing thoughts. Upon mental status examination, she was well groomed, had average eye contact and speech, no hallucinations or delusions, logical thought

processes, cooperative behavior, and no cognitive impairment. McGuire was diagnosed with major depression and panic disorder. (*PageID* 412.)

**Administrative Law Judge's Findings.** The administrative law judge found that:

1.    The claimant has not engaged in substantial gainful activity since June 8, 2009, the application date (20 CFR 416.971 *et seq.*).

2.    The claimant has the following severe impairments: lumbar radiculopathy, degenerative disc disease of the lumbar spine, coccyx angulation, left femoral head defect, bilateral CAM deformities of the hips, depression, anxiety, and adjustment disorder with depressed mood (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, [the administrative law judge] finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch, and crawl; and can occasionally operate foot pedals with her lower extremities. She is also limited to tasks that are relatively static with only occasional changes in work settings, and where any changes that do occur can be explained. These tasks should not require independent prioritization or more than daily planning.

5.    The claimant is capable of performing past relevant work as a cleaner/housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6.    The claimant has not been under a disability, as defined in the Social Security Act, since June 8, 2009, the date the application was filed (20 CFR 416.920(f)).

(*PageID* 46-54.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.*  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  McGuire argues that the decision of the Commissioner denying benefits should be reversed because:

•       The administrative law judge improperly assigned weight to records.  Plaintiff contends that the administrative law judge should have afforded greater deference to the physical residual functional capacity assessment made by treating physician Dr. Miller.  According to Plaintiff, the administrative law judge erred by giving more

weight to an assessment of Dr. McCloud, the state agency reviewer.  (Doc. 9 at *PageID* 502-04.)

•     <u>The administrative law judge made an erroneous credibility finding</u>.  Plaintiff argues that her statements were consistent with the findings of the treating doctor, Dr. Miller, who found her residual functional capacity to be lower than sedentary, and Dr. Jackson, who found her residual functional capacity to be sedentary.  (*Id.* at *PageID* 504.)

•     <u>The administrative law judge proposed an improper hypothetical and improperly failed to define moderate limitations</u>.  Plaintiff contends that the administrative law judge erroneously omitted restrictions related to McGuire's ability to withstand stress and pressure of daily work as assessed by consulting psychologist, Dr. Tanley, and the administrative law judge failed to use this limitation in proposing his hypothetical.  (*Id.* at *PageID* 505.)

•     <u>The administrative law judge failed to consider favorable evidence and made a finding based on a partial record</u>.  Plaintiff contends that the administrative law judge failed to discuss a GAF score of 47.  Doc. 9 at *PageID* 506.

**Analysis.**  <u>Treating Physician: Legal Standard</u>. A treating doctor's opinion[1] on the issue of disability is entitled to greater weight than that of a physician who has examined Plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record. *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).  The Commissioner's regulations explain that Social Security generally gives more weight to a treating doctors' opinions because treators are usually "most able to provide a detailed, longitudinal picture" of the claimant's medical impairments.  20 C.F.R. § 404.1527(c)(2). When the treating doctor's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the Commissioner "will give it controlling weight."  *Id.*

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical

---

[1]The Commissioner's regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).  Treating sources often express more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at *2.  When an administrative law judge fails to give a good reason for rejecting a treator's medical opinion, remand is required unless the failure does not ultimately affect the decision, *i.e.,* the error is *de minimis*.  *Wilson*, 378 F.3d at 547.  So reversible error is not committed where the treator's opinion "is patently deficient that the Commissioner could not possibly credit it;" the administrative law judge's findings credit the treator's opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R. § 404.1527(d)(2) but does not technically meet all its requirements. *Id. See, Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013).

adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable." 42 U.S.C. §423(c)(1)(A). Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence. *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004); *Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson,* 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano,* 558 F.2d 253, 254-256 (5th Cir. 1975). 20 C.F.R. §404.1513(b), (c), (d), 404.1526(b), and 404.1527(a)(1)[2].

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(c)(1). When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

When the treating source's opinion is well-supported by objective medical

---

[2]Section 404.1527(a)(1) provides:
You can only be found disabled if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* §404.1505. Your impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See* §404.1508.

evidence and is not inconsistent with other substantial evidence, that ends the analysis. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p.  *Gayheart v. Commissioner of Social Security*,  710 F.3d 365, 375 (6th Cir. 2013).  The Commissioner's regulations require decision-makers "to provide 'good reasons' for discounting the weight given to a treating-source opinion. [20 C.F.R.] § 404.1527(c)(2)."[3]  *Gayheart*, 710 F.3d at 375.

The Commissioner has issued a policy statement about how to assess treating sources' medical opinions. Social Security Ruling 96-2p. It emphasizes:

1.  A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2.  Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.*, opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3.  Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

4.  Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5.  The judgment whether a treating source's medical opinion is well supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

---

[3]Section 404.1527(c)(2) provides, in relevant part: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

6.      If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7.      A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may   still be entitled to deference and be adopted by the adjudicator.

The focus at this step is solely on whether the treating-source opinion is well-supported by objective medical evidence and not inconsistent with other substantial evidence.  In making this determination the factors for assessing the *weight* to give to the medical opinions of any medical source, 20 C.F.R. § 404.1527(c), are not used.  These come into play only when there are good reasons not to give the treating-source opinion controlling weight.  20 C.F.R. § 404.1527(c)(2)[4];  *Gayheart*,  710 F.3d at 376.

If there are good reasons to find that the treating-source opinion is not controlling, then the decision-maker turns to evaluating all the medical source evidence and determining what weight to assign to each source, including the treating sources. [5]

---

[4]Section 404.1527(c)(2) provides, in relevant part:
If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determin-ing the weight to give the opinion.

(Emphasis added.)

[5]Even when the treating source's opinion is not controlling, it may carry suffic-ient weight to be adopted by the Commissioner:

17

The Commissioner's regulations require the decision-maker to considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision. 20 C.F.R. § 404.1527(c)(1) through (6). Subject to these guidelines, the Commissioner is the one responsible for determining whether a claimant is disabled. 20 C.F.R. § 404.1527(e).

The case law is consistent with the principals set out in Social Security Ruling 96-2p. A broad conclusory statement of a treating physician that his patient is disabled is not controlling. *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th

---

Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 404.1527. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p.

Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(c)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004).  Even when the Commissioner determines not to give a treator's opinion controlling weight, the decision-maker must evaluate the treator's opinion using the factors set out in 20 C.F.R. § 404.1527(c)(2).  *Wilson*, 378 F.3d at 544; *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).  There remains a rebuttable presumption that the treating physician's opinion "is entitled to great deference."  *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007); *Hensley*, above. The Commissioner makes the final decision on the ultimate issue of disability.  *Warner v. Commissioner of Social Security*, 375 F.3d at 390; *Walker v. Secretary of Health & Human Services*, 980 F.2d 1066, 1070 (6th Cir. 1992); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

    Treating Physician: Discussion.

    **Analysis.**

In formulating McGuire's physical residual functional capacity, the administrative law judge gave significant weight to the opinions of Dr. Jackson and Dr. Ellis[6] that she should avoid heavy lifting and repetitive stooping and twisting as such recommendations are consistent with the objective evidence of spinal stenosis and hip malformation.  (*PageID* 52, citing to *PageID* 332, 495.)  The administrative law judge did not give weight to Dr. Jackson's suggestion that McGuire is limited to sedentary work, finding it "unsupported by clinical findings and by the claimant's own testimony to difficulty with extended sitting." (*PageID* 52.)  The administrative law judge gave little weight to the opinion of Dr. Miller, McGuire's primary care physician, "as his extreme limitations on lifting, sitting, standing, and walking are inconsistent with his own generally normal clinical findings and the minimal clinical findings of other treating physicians." *Id.*

The administrative law judge's reasons for assigning "little" weight Dr. Miller's opinions and assigning "significant" weight to portions of the opinions of Drs. Jackson and Timperman are supported by substantial evidence.  The administrative law judge properly noted that Dr. Miller's opinion was internally inconsistent and inconsistent with the clinical findings of the other treating physicians.  (*PageID* 52.)  The administrative law judge recognized that McGuire "does suffer from structural defects in her lumbar spine and hips", and he gave weight to her treating doctors' opinions that she

---

[6]The administrative law judge also cites to Dr. Timperman's assessment, who is a neurosurgeon.  *See, PageID* 332.

20

should avoid heavy lifting, and thus limited her to light work.  In addition, the record consisted of only conservative treatment.  (*PageID* 51.) Further, on examination McGuire has had no neurological deficits, no sensory loss, and no muscle weakness or muscle spasm. (*PageID* 290, 332, 384, 495, and 498.) Dr. Jackson, an orthopedic physician, found that straight leg raising was negative (*PageID* 495 and 498), as did Dr. Timperman, a neurologist. (*PageID* 332.) The only pain medication prescribed has been naproxen. (*PageID* 332.)

For these reasons, the record contained substantial evidence supporting the administrative law judge's weighing of Dr. Miller's, Dr. Jackson's, and Dr. Timperman's opinions.

Credibility.

McGuire's next claim of error finds fault with the administrative law judge's credibility determination.  Specifically, McGuire claims that her statements were consistent with the findings of the treating doctor, Dr. Miller, who found her residual functional capacity to be lower than sedentary, and Dr. Jackson, who found her residual functional capacity to be sedentary.  (*Id.* at *PageID* 504.)

An administrative law judge "is not required to accept a claimant's subjective complaints and may consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 469, 476 (6th Cir. 2003), citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  An administrative law judge's credibility determinations about a claimant are to be given great weight.  How-

ever, they must also be supported by substantial evidence.  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). "Discounting credibility to a certain degree is appropriate where an administrative law judge finds contradictions among medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531, citing *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988).

The record here is replete with objective medical evidence indicating that McGuire had medically determinable impairments.  The administrative law judge acknowledged these impairments, and further recognized that:

> Because of her limited lumbar and hip ranges of motion, the undersigned also provides she can never climb ladders, ropes, and scaffolds, and can only occasionally operate foot pedals bilaterally. However, she can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, as supported by her normal strength and sensation and her testimony that she is able to climb stairs and bend and touch her knees. The claimant's testimony as to her lifting, sitting, standing, and walking abilities is simply not credible based on the evidence of record.

(*PageID* 52.)  In making this credibility determination, the administrative law judge properly relied on the record evidence, including objective medical findings and McGuire's own statements about her daily activities.  *See* 20 C.F.R. § 416.929(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms) and 20 C.F.R. § 416.929(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms).

The administrative law judge found that McGuire's statements regarding her varied activities contradict her allegations concerning the intensity, duration, and

limiting effects of her symptoms.  (*PageID* 62, 66.)  The administrative law judge noted that McGuire reported that she drove her daughter to/from school (and could drive at least 20-40 minutes at a time), visited with family, performed household chores, and cooked and shopped with help. (*PageID* 51, 53.)  It was not improper for the administrative law judge to consider plaintiff's ability to engage in activities of daily living in assessing the credibility of his claims to be unable to work.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004), citing *Walters*, 127 F.3d at 532.

Based upon the foregoing, the undersigned finds that the administrative law judge's assessment of McGuire's credibility was based on consideration of the entire record and is supported by substantial evidence.  Accordingly, applying the applicable deferential standard of review, the undersigned concludes that the administrative law judge's credibility determination was not erroneous.

Vocational Expert Testimony.

Plaintiff argues that the administrative law judge asked the vocational expert a deficient hypothetical question because it did not it did not adequately reflect McGuire's mental limitations. Plaintiff asserts that the administrative law judge should have included limitations related to her ability to withstand stress and pressure of daily work.

A proper hypothetical question should accurately describe the claimant "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the

23

claimant." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *see Varley v. Secretary of HHS*, 820 F.2d 777, 779 (6th Cir. 1987). "[T]he administrative law judge is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of HHS*, 39 F.3d 115, 118 (6th Cir. 1994).

Contrary to Plaintiff's contentions, the administrative law judge discussed Dr. Tanley's assessment, determined that McGuire had several severe mental impairments, *i.e.* depression, anxiety and an adjustment disorder with depressed mood and recognized that McGuire had moderate limitations in concentration, persistence of pace. (*PageId* 47.) The administrative law judge's hypothetical question to the vocational expert was adequate and proper because it included all McGuire's substantiated impairments and resultant limitations. Indeed, the hypothetical question that the administrative law judge posed took into consideration limitations that accurately reflected the difficulties that McGuire experienced and that were supported by the record as a whole. *See PageID* 94-95. Based on the evidence of record, the administrative law judge reasonably determined that because of her impairments, Plaintiff would be limited to the light exertional level, could occasionally climb ramps and stairs but could not climb ladders, ropes or scaffolds, could occasionally stoop, kneel, crouch, and crawl, push/pull and operation of foot pedals or foot controls would be limited to occasional bilaterally, would be limited to task that are relatively static with only occasional change in the work setting, changes that do occur could be explained and could also do tasks that do not require independent prioritization or more than daily planning. (*PageID* 94-95.)

Even assuming, as Plaintiff asserts, that the administrative law judge should have included a limitation to withstand stress and pressure of daily work, the hypothetical questions posed to the vocational expert identified a significant number of jobs available to someone who would be limited to task that are relatively static with only occasional change in the work setting, changes that do occur could be explained and could also do tasks that do not require independent prioritization or more than daily planning.  (*PageID* 95-98.)  The hypotheticals to the vocational expert caused plaintiff no prejudice.

<u>GAF Score Before Onset Date of Disability</u>.

Plaintiff's *Statement of Errors* concludes with a summary argument that the administrative law judge failed to consider the entire record in making his determination. Plaintiff argues that the administrative law judge ignored a GAF score of 47 assessed by a social worker in November 2006, from a treatment record three years prior to her onset date of disability.  (*PageID* 414.)

Plaintiff's analysis falls short of the law.  Her reliance on an GAF score is inappropriate.  The Commissioner has already recognized that the GAF is not an indication of nondisability for Social Security purposes.  "The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury," 65 F.R. 50765 (Vol. 162,

August 21, 2000). "Furthermore, the Commissioner 'has declined to endorse the [GAF] score for use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings . . . . The GAF scores, therefore, are not raw medical data and do not necessarily indicate improved symptoms or mental functioning." *Kennedy v. Astrue*, 247 Fed.Appx. 761, 766 (6th Cir. 2007)(internal citations and punctuation omitted). In addition, as noted above, *supra* n.3, a GAF score merely represents a "snapshot" of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin*, 61 Fed.Appx. at 194 n.2 ; *see also* DSM-IV-TR at 32-34.  As such, a GAF assessment is isolated to a relatively brief period of time, rather than being significantly probative of a person's ability to perform mental work activities on a full-time basis.

In addition, plaintiff's GAF score after her alleged onset date of disability was 60 indicating only moderate symptoms.  (*PageID* 353.)   When McGuire underwent a mental health assessment on October 26, 2009, no GAF score was even assessed.  (*PageID* 402-13.)

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.**  It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within

fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


 s/Mark R. Abel
United States Magistrate Judge